IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA RAY, | : | |
| | : | Case No. 2:21-cv-179 |
| **Plaintiff,** | : | |
| | : | Chief Judge Algenon L. Marbley |
| v. | : | |
| | : | Magistrate Judge Deavers |
| CHARTER COMMUNICATIONS, LLC | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before this Court on Defendant's Motion to Compel Arbitration and for an order awarding fees and costs incurred in bringing the Motion. (ECF No. 6). For the following reasons, the Motion is **GRANTED in part and DENIED in part**, and this case is hereby **STAYED** pending arbitration. The parties are **ORDERED** jointly to file a status report **every six (6) months** indicating the status of arbitration.

I.  BACKGROUND

Defendant Charter Communications, LLC ("Charter") is a telecommunications and mass media company with call centers across the country, including in Columbus, Ohio. (ECF No. 6-1 at 1). In October 2017, Charter implemented an employment-based legal dispute resolution program called Solution Channel. (*Id.* at 2). Since implementation, Charter requires all external applicants to participate in Solution Channel, and to be bound by the program's Mutual Arbitration Agreement (the "MAA"). (*Id.*). The MAA reads:

> Charter requires that all legal disputes involving employment with Charter or application for employment with Charter, be resolved through binding arbitration. Charter believes that arbitration is a fair and efficient way to resolve these disputes. Any person who submits an application for consideration by Charter agrees to be bound by the terms of Charter's Mutual Arbitration Agreement, where the person and Charter mutually agree to submit any covered claim, dispute, or controversy to

1

>arbitration. By submitting an application for consideration you are agreeing to be bound by the Agreement.

(*Id*. at 11). Individuals who successfully apply and receive an offer of employment must complete a web-based onboarding process before their employment is finalized.[1] (*Id*.). After accessing the onboarding system and accepting an employment offer, new employees are prompted to review various company policies and agreements, including the MAA. (*Id*. at 3). To consent to the MAA, the new employee must click a link which opens a readable version of the document. (*Id*.). At the end of the MAA, the new employee is presented with the following message:

>MY ELECTRONIC SIGNATURE ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND BY ALL OF THE ABOVE TERMS CONTAINED IN THE MUTUAL ARBITRATION AGREEMENT. I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT, EXCEPT AS EXPRESSLY PROVIDED OTHERWISE. I ALSO UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I EXPRESSLY WAIVE MY RIGHT TO PARTICIPATE IN A COLLECTIVE, CLASS, OR REPRESENTATIVE ACTION AGAINST CHARTER.

(*Id*. at 3–4). The new employee is then prompted to check a box acknowledging this disclaimer and then must click "Submit." (*Id*.). Until an individual completes the onboarding process, he or she cannot become a Charter employee. (*Id*.).

Plaintiff, Laura Ray worked as an Inbound Sales Manager ("ISM") for Charter's Columbus, Ohio, call center from December 16, 2017, until July 17, 2020. (ECF No. 1 at ¶ 5). Plaintiff applied for this position on November 18, 2017. (ECF No. 6-1 at 6–12). In completing her application, Plaintiff was presented with the message detailed above, and responded "I agree." (*Id* at 11). Moreover, the online onboarding system shows Plaintiff consented to the MAA on December 6, 2017. (*Id*. at 4).

---

[1] "Individuals access the Onboarding System using a unique login ID and temporary confidential access code, which Charter emails to the individual using the personal email address provided . . . ." (ECF No. 6-1 at 2).

In March 2019, Plaintiff was named Acting Director of Inbound Sales at the call center. (*Id*., ¶ 6). During this time, Plaintiff alleges a subordinate disclosed to her that the subordinate experienced "unwanted grabbing and intimidation" from another ISM, Ben Jones. (*Id*.). After attempting to speak with Mr. Jones about the incident, Plaintiff reported this behavior to both her supervisor and Human Resources. (*Id*.). Thereafter, in December 2019, Charter promoted Mr. Jones to Director of Inbound Sales. (*Id*., ¶ 7). Following this promotion, Mr. Jones allegedly engaged in a retaliatory campaign against Plaintiff, including: not inviting her to management meetings, unnecessarily disciplining her, badgering her with harassing phone calls and rejecting her application for intermittent FMLA leave. (*Id*., ¶¶ 8–12). Later, in May 2020, Plaintiff reported to Charter's "anonymous" hotline that she witnessed Mr. Jones sexually harassing another Charter employee. (*Id*., ¶ 13). After that employee resigned, citing this harassment, Charter's Human Resources Director, Tanya Joseph, called Plaintiff and asked if she had any personal knowledge of this harassment. (*Id*., ¶ 17). Allegedly not satisfied with Plaintiff's representations in response, on July 17, 2020, Charter terminated Plaintiff's employment for not reporting the harassment complaints. (*Id*., ¶ 18).

On October 30, 2020, Plaintiff submitted an unlawful termination claim through Solution Channel. (ECF No. 6-2 at 2). Charter completed its internal review of her claim on November 24, 2020, denied all alleged wrongdoing, and reminded her of the steps necessary to seek further review. (ECF No. 6-3). In accordance with this guidance and the MAA, Plaintiff's counsel demanded arbitration, and a new matter was opened with the American Arbitration Association ("AAA"). (ECF No. 6-4). The parties then selected an arbitrator and eventually appointed David Cohen to preside over the matter on January 8, 2021. (ECF Nos. 6-5, 6-6, 6-7). On January 19,

2021, before the parties could engage in substantive arbitration, Plaintiff withdrew her claims from arbitration. (ECF No. 6-8).

That same day, Plaintiff initiated this action against Charter alleging federal and state law claims relating to her termination and seeking declaratory relief and compensatory damages. (*See generally* ECF No. 1). As relevant to this dispute, Plaintiff seeks a declaratory judgment that the MAA is unenforceable (*Id.*, ¶¶ 47–49). Defendant filed the instant Motion on June 7, 2021, asking this Court to compel arbitration and dismiss or, alternatively, stay this action pending the outcome of arbitration. (ECF No. 6). Plaintiff responded to Defendant's Motion on June 28, 2021, Defendant timely replied, and this Motion is now ripe for review.

## II. STANDARD

Under the Federal Arbitration Act ("FAA"), arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of an arbitration agreement. 9 U.S.C. § 4. The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-02044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* at *1; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in light most favorable to the non-moving party." *Jones v. U-Haul Co. of Massachusetts*

4

*& Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014). The court has four tasks: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of that agreement; (3) if federal statutory claims are asserted, determine whether Congress intended those claims to be non-arbitrable; and (4) if some, but not all, of the claims are subject to arbitration, determine whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714. In determining whether the parties agreed to arbitrate, the Court must apply state contract law. *DeAngelis v. Icon Entm't Grp., Inc.*, 364 F. Supp. 3d 787, 792 (S.D. Ohio 2019). Thus, "state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The parties agree that Ohio law applies here.

### III. LAW & ANALYSIS

Charter makes two requests in its Motion. First, it asks this Court to compel arbitration under the FAA and dismiss this action pursuant to Rule 12(b)(6) or, in the alternative, stay proceedings pending arbitration. (*See* ECF No. 6 at 6–11). Second, Charter asks this Court to award it costs, fees, and expenses, including reasonable attorneys' fees, incurred in compelling arbitration. (*Id*. at 12–13). This Court begins with the former request.

#### A. Compel Arbitration

Charter argues the facts establish the parties agreed to arbitrate, the alleged claims are arbitrable and covered by the agreement, and as a result, this Court should dismiss the Complaint or, alternatively, stay this proceeding. (*See generally id*.). To the first argument, Charter maintains the MAA is valid and enforceable. (*Id*. at 6–10). Specifically, Charter asserts that, as required under Ohio law, it offered Plaintiff the MAA, she accepted it and the agreement is supported by

5

valid consideration. (*Id*. at 7). Regarding consideration, Charter maintains Ohio Courts have generally held that an offer of employment is sufficient consideration to support an arbitration agreement. (*Id*. (citing *Butcher v. Bally Total Fitness Corp.*, 2003-Ohio-1734, ¶31 (8th Dist.)). Moreover, Charter submits this specific MAA has been routinely enforced by federal courts both in and outside this district. (*Id*. at 8 (citing *Collins v. Charter Comm.*, No. 1:19-cv-2774 (N.D. Ohio June 18, 2020) (granting motion to compel arbitration under this MAA); *Young v. Charter Comm., Inc.*, 6:20-cv-989-WWB-GJK (M.D. Fla. March 10, 2021) (same); *Prizler v. Charter Comm., LLC*, 2019 WL 2269974 (S.D. Cal. May 28, 2019) (same))). Of similar significance, Charter argues that by initially agreeing to participate in Solution Channel, Plaintiff has performed her obligations under the MAA and waived any objection to the arbitrator's jurisdiction. (*Id*.).

As to the remaining factors under *Stout*, they too, says Charter, support compelling arbitration. First, Charter maintains the claims asserted in the Complaint fall squarely within the scope of the MAA. The MAA contemplates "all disputes, claims, and controversies . . . related to pre-employment, employment, employment termination or post-employment . . .[,]" which Charter asserts encompasses Plaintiff's claims for discrimination, retaliation and wrongful termination. (*See* ECF No. 6-1 at 22; *see also* ECF No. 6 at 11). Charter also represents that by explicitly mentioning "disputes related to the arbitrability of any claim or controversy" the MAA similarly encompasses Plaintiff's claim for declaratory relief relating to the enforceability of the MAA. (*Id*.). Second, Charter argues there is no evidence Congress intended FMLA claims, such as those asserted here, cannot be arbitrated. (*Id*. (citing *Morgan v. United Healthcare Servs., Inc.*, 2013 WL 1828940, at *4 (S.D. Ohio Apr. 30, 2013))). Finally, given all Plaintiff's claims are arbitrable, Charter argues this Court should dismiss the Complaint, or, in the alternative, stay this proceeding pending the outcome of arbitration. (*Id*. at 13–14).

6

In response, Plaintiff asserts she never agreed to arbitrate all employment related disputes, and as a result, compelling arbitration is improper.[2] (*See generally* ECF No. 9). Plaintiff makes three arguments to this point. First, she maintains that accepting an application for employment is not adequate consideration for enforcing an arbitration agreement regarding potential employment claims. (*Id*. at 2). Here, Plaintiff relies on *Walker v. Ryan's Family Steak Houses, Inc.*, wherein the Sixth Circuit, interpreting Tennessee law, held that employment is not adequate consideration for an agreement to arbitrate. (*Id*. (citing 400 F.3d 370, 380 (6th Cir. 2005), *cert. denied* 546 U.S. 1030 (2005))). Second, Plaintiff contends her alleged assent to the MAA, via her employment application, could not have been knowing and voluntary because its key provisions were not known to her at the time of the alleged assent. (*Id*. at 3). Plaintiff argues she could not have known the full extent of what she was agreeing to provide only with the brief message in the application (*see supra* at Part I). (ECF No. 9 at 3). Specifically, she maintains she could not have known she was required to bear the costs of arbitration. (*Id*.). Plaintiff further argues she never assented to the MAA during the onboarding process. She represents that she never completed any online onboarding and, moreover, she could not have done so in the minimal time alleged by Charter. (*Id*. at 4). Finally, Plaintiff argues that beginning the arbitration process does not make the MAA any more or less enforceable. (*Id*. at 5).

In reply, Charter attacks Plaintiff's version of events. First, it maintains its previous arguments on the enforceability of the MAA and asserts that Plaintiff's failure to inquire further about the MAA upon submitting her application does not preclude its enforcement. (ECF No. 10 at 3). Second, Charter claims the record evidence demonstrates Plaintiff accessed the onboarding system, and her allegation otherwise is false. (*Id*. at 5). Charter offers timestamps from the

---

[2] Plaintiff asserts that because the question of whether the parties agreed to arbitrate constitutes a threshold inquiry it need not, and does not, discuss the remaining *Stout* factors. (*See* ECF No. 9 at 1).

7

onboarding software, showing when Plaintiff logged on, when she was directed to the full MAA and when she agreed to it. (*Id*. (citing ECF No. 6-1 at 11, 16). Charter further argues the amount of time Plaintiff took to complete onboarding is immaterial, as Ohio law makes clear "'a person who is competent to contract and who signs a written document without reading it is bound by its terms . . .'" (*Id*. (quoting B*all v. Ohio State Home Servs., Inc.*, 2006-Ohio-4464, ¶9 (9th Dist.))).

As detailed above, because state contract law applies, defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements. *Cooper*, 367 F.3d at 498. Where the contract includes a delegation provision, however, the analysis changes. A delegation provision is an "agreement[ ] to arbitrate threshold issues concerning the arbitration agreement." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 395–96 (6th Cir. 2017). In *Rent-A-Center, W., Inc. v. Jackson*, the Supreme Court held that under the FAA, a district court may not decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator. 561 U.S. 63, 75 (2010). In other words, when there is a delegation provision, the Court will only intervene if the party seeking to avoid arbitration challenges the delegation provision itself. *Id*. at 71–72.

The MAA's delegations provision reads as follows: "[a]rbitration hearings will be conducted pursuant to the Solution Channel Program Guidelines and **the arbitrator shall have the sole authority to determine whether a particular claim or controversy is arbitrable**." (ECF No. 6-1 at 24) (emphases added). This language mirrors that in the delegation agreement at issue in *Rent-A-Center*. *See* 561 U.S. at 65 (holding that a provision in an arbitration agreement which stated "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement[,]" constituted an enforceable delegation provision).

8

Plaintiff challenges the MAA as follows: (1) it is unsupported by adequate consideration; (2) she never assented to it; and, (3) if she did assent, it could not have been voluntary or knowing, as she did not know all of the MAA's key provisions. (*See generally* ECF No. 9). Neither in her response to Defendant's Motion nor in her Complaint does Plaintiff attack the delegation provision. As a result, her disputes about the enforceability of the MAA must be resolved by an arbitrator. *See Rent-A-Center*, 561 at U.S. at 72; *see also Danley v. Encore Capital Grp., Inc.*, 680 Fed. Appx. 394, 398 (6th Cir. 2017) (finding the arbitrator must rule on enforceability issues when "as in *Rent-A-Center*, the parties 'clearly and unmistakably' provided for an arbitrator to determine various 'gateway issues' relative to their claims" and the plaintiffs "did not acknowledge their delegation provisions, let alone challenge them"); *Milan Exp. Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 Fed. Appx. 482, 485 (6th Cir. 2014) (finding parties "manifestly intended to submit the threshold question of arbitrability to the arbitrator" and such agreement is "enforceable like any other contract in accordance with its terms").

There is somewhat of a logical conundrum in finding that Plaintiff must arbitrate the question of whether she agreed to arbitrate. Ultimately, however, to adjudicate whether the MAA is supported by consideration or whether there was mutual assent, would be to engage in the type of analysis that the Supreme Court held impermissible in *Henry Schein, Inc. v. Archer & White Sales, Inc*. There, the Court opined that once the parties have a delegation clause, "a court possesses no power to decide the arbitrability issue," *Henry Schein, Inc.*, 139 S.Ct. at 529 (emphasis added), and that "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id*. at 530. Whether the MAA is supported by consideration and whether there was mutual assent are questions of the enforceability of the MAA, and the parties agreed to delegate

9

such questions to an arbitrator. This Court, therefore, will not resolve the enforceability dispute. Instead, it will compel arbitration so the matter can be resolved by an arbitrator.

The only remaining dispute is whether this litigation should be stayed or dismissed pending arbitration. Charter asserts that because all the claims are subject to arbitration, the case should be dismissed. (ECF No. 6 at 13). Plaintiff, meanwhile, represents that dismissal is unwarranted, and rather a stay of proceedings is appropriate. (ECF No. 9 at 1). This "Court has discretion to stay or dismiss the instant matter." *Champness v. J.D. Byrider Sys., LLC*, No. 1:14-CV-730, 2015 WL 247924, at *12 (S.D. Ohio Jan. 20, 2015) (citing 9 U.S.C. § 3 (mandating courts to stay proceedings pending completion of arbitration) and *Hensel v. Cargill, Inc.*, No. 9-3199, 199 WL 994775, at *4 (6th Cir. Oct. 1, 1999) (permitting courts to dismiss actions in which all claims are referred to arbitration)). In its discretion, the Court finds that staying the case would promote judicial efficiency, given the possibility that the arbitrator could find the MAA unenforceable, in which event this litigation may proceed.[3]

Accordingly, pursuant to the foregoing analysis, this Court **COMPELS ARBITRATION**, and the above-captioned case is hereby **STAYED** pending the outcome of arbitration. The parties are **ORDERED** jointly to file a status report **every six (6) months** indicating the status of arbitration.

### B. Fees and Costs for Enforcing Arbitration

Defendant has also moved for attorney's fees and costs for their efforts to compel arbitration, either as prescribed by the MAA or pursuant to 28 U.S.C. § 1927. (ECF No. 6 at 12–13). As to the first basis, the MAA provides that:

> If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that

---

[3] The Court notes it is not passing any judgment on the merits of either party's unconscionability arguments.

> resisted arbitration will be required to pay the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

(*Id*. at 12). Should the Court compel arbitration, as it has here, Charter argues this language entitles it to reasonable attorney's fees and costs incurred in bringing its Motion. (*Id*.). Charter also maintains that, regardless of this language in the MAA, Plaintiff's counsel has acted "unreasonably and vexatiously" by withdrawing from arbitration and initiating this lawsuit. (*Id*. at 13). As a result, says Charter, this Court should require Plaintiff's counsel personally satisfy the excess costs, expenses, and attorney's fees reasonably incurred. (*Id*. (citing 28 U.S.C. § 1927)). In response, Plaintiff first asserts the language in the MAA highlighted by Charter is immaterial as the entire agreement is unenforceable. (ECF No. 9 at 6). Moreover, even if the Court rejects her arguments as to unenforceability, Plaintiff asserts they are not sufficiently frivolous or unreasonable to warrant sanctions. (*Id*.).

Although under the "American rule," each party pays its own way in litigation, such arrangement can be preempted by contract. *See Cook v. All State Home Mortg.*, 329 F. App'x 584, 588–89 (6th Cir. 2009) (unpublished). The arbitration agreement clearly provides for attorney's fees and costs where, as here, one party must take action to enforce the arbitration agreement. Such provisions typically are enforceable. *See, e.g., Cook v. All State Home Mortg., Inc.*, NO. 1:06 CV 1206, 2006 WL 2252538, at *3, 2006 U.S. Dist. LEXIS 54621, at *9–10 (N.D. Ohio Aug. 7, 2006); *Cook*, 329 F. App'x at 589; *Johnson v. Western & Southern Life Co.*, No. 1:13-cv-01659-SEB-DKL, 2014 WL 4370772, at *6, 2014 U.S. Dist. LEXIS 122469, at *14 (S.D. Ind. Sept. 3, 2014).

It would, however, be premature to assess fees before the arbitration agreement is found valid. The delegation clause requires that Plaintiff's challenges to the validity of the arbitration agreement be submitted to an arbitrator. It is possible that the arbitrator would find the arbitration

11

agreement invalid. While the delegation clause would still have required the parties to resolve such challenges through arbitration, it would make little sense to grant attorney's fees when the validity of the arbitration agreement has yet to be determined. *Cf. Cook v. All State Home Mortg., Inc.*, 2006 WL 2794702, at *3, 2006 U.S. Dist. LEXIS 69541, at *9 (N.D. Ohio 2006) (finding no jurisdiction over to assess previously ordered fees because issue of fees was "inherently bound up with the decision on the validity of the arbitration clause," which was on appeal). Moreover, given this potential outcome, this Court does not find Plaintiff's Counsel's actions "fall[] short of the obligations owed by the member of the bar to the court[]." *Parrot v. Corley*, 266 Fed. Appx. 412, 414 (6th Cir. 2008) (citing 28 U.S.C. § 1927). Thus, Defendant's request for fees is **DENIED WITHOUT PREJUDICE** pending the outcome of arbitration.

### IV. CONCLUSION

In accordance with the foregoing discussion, Defendant's Motion (ECF No. 6) is **GRANTED in part and DENIED in part**, and this case is **STAYED** pending completion of arbitration. The parties are **ORDERED** jointly to file a status report **every six (6) months** indicating the status of arbitration.

**IT IS SO ORDERED.**

                                                      **ALGENON L. MARBLEY**
                                                      **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 18, 2022**